UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LISA MARIE GABRIEL,

     Plaintiff,

v.                           Case No.:  5:21-cv-409-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## <u>OPINION AND ORDER</u>

Plaintiff Lisa Marie Gabriel seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

## B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on August 16, 2019, alleging disability beginning April 25, 2019. (Tr. 66, 180-81). The application was denied initially and on reconsideration. (Tr. 66, 80). Plaintiff requested a hearing and a hearing was held on October 6, 2020, before

Administrative Law Judge ("ALJ") Pamela Houston. (Tr. 30-54). On November 2, 2020, the ALJ entered a decision finding Plaintiff not disabled from April 25, 2019, through the date of the decision. (Tr. 15-25).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on June 22, 2021. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on August 10, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 18).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2022. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 25, 2019, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairment: "headache disorder." (Tr. 17). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds claimant has the RFC for light work (20 [C.F.R. §] 404.1567(b)), except frequently handle bilaterally; avoid: work at heights, work with dangerous machinery and dangerous tools, constant temperatures over 90°F and under 40°F, constant vibration, concentrated exposure to pulmonary irritants (e.g., dust, fumes, gases, chemicals), and noise over moderate (per the DOT).

(Tr. 19).

At step four, the ALJ relied on the vocational expert's testimony to find Plaintiff was capable of performing her past relevant work as a receptionist and a bank teller as they are generally performed in the national economy. (Tr. 23-24). The ALJ found this work did not require the performance of work-related activities that were precluded by Plaintiff's RFC. (Tr. 23-24).

Alternatively, at step five the ALJ considered Plaintiff's age (42 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, and found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24-25). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1)   hand packager & inspector, DOT 559.687-074,[1] light, SVP 2

(2)   marker, DOT 209.587-034, light, SVP 2

(3)   router, DOT 222.587-038, light SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

(Tr. 24-25). The ALJ concluded that Plaintiff had not been under a disability from April 25, 2019, through the date of the decision. (Tr. 25).

## II.     Analysis

On appeal, Plaintiff raises three issues: (1) whether the ALJ failed to apply the correct legal standards to Dr. Kim's opinion; (2) whether the ALJ failed to apply the correct legal standards to Plaintiff's testimony regarding her pain and limitations; and (3) whether Plaintiff is entitled to a legitimate valid hearing before an ALJ who has lawful authority to hear and decide her claim based on valid legal authority. (Doc. 17, p. 1-2).

### A.     Evaluation of Lance Kim, D.O.'s Opinion

Plaintiff argues that the ALJ's finding that Dr. Kim's opinion was partially persuasive is not supported by substantial evidence. (Doc. 17, p. 12). Plaintiff claims that while some records may document that she is doing well for a time, other records show that she continued to experience repeated headaches. (Doc. 17, p. 12). The Commissioner contends that the ALJ provided sufficient reasons to find Dr. Kim's opinion partially persuasive and substantial evidence supports these reasons. (Doc. 22, p. 24-27).

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an

ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the

revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

Dr. Kim is board certified in neurology, sleep medicine, vascular neurology, clinical neurophysiology, electrodiagnostic medicine, pain medicine, and headache medicine. (Tr. 454-55). Dr. Kim saw Plaintiff around five times from August 2019 through July 2020 for migraines, other headaches, and associated symptoms. (Tr. 437).

At the first August 2019 visit, Plaintiff reported that she had experienced migraine headaches virtually her entire life. (Tr. 437). The headaches caused deep, sharp, throbbing pressure, causing her head to feel like it would explode. (Tr. 437). For unknown reasons, the headaches intensified in 2016, when they became an almost daily event. (Tr. 437). Plaintiff reported that she had tried an extensive medication regimen, including NSAIDs, muscle relaxers, opioids, and a variety of pain killers without success. (Tr. 437). Her headaches occurred around 20-25 days a month. (Tr. 437). Plaintiff also reported that along with headaches, she suffered from a frequent sense of vertigo, disequilibrium, visual obscuration, visual blurriness, and nausea. (Tr. 437). Her headaches were often associated with photophobia and phonophobia. (Tr. 437). Plaintiff's neurological examination was generally normal, but Dr. Kim noted a dysphoric affect and a reduced attention span and concentration. (Tr. 438). Dr. Kim diagnosed Plaintiff with chronic intractable daily headache of a migraine type. (Tr. 438). For the headaches, Dr. Kim ordered an MRI of the brain, EEG, and TCD for evaluation and also ordered other tests for suspected carpal tunnel syndrome or cervical radiculopathy. (Tr. 438). He modified her medication regimen for the headaches. (Tr. 438).

Dr. Kim saw Plaintiff in September 2019 for a follow-up. (Tr. 441). Plaintiff reported she was doing well and was in relative remission for her conditions. (Tr. 441). He found her TCD, NCS, EEG unremarkable and her MRI of the brain within

normal limits. (Tr. 441). Plaintiff's examination was essentially normal except for gait apraxia. (Tr. 442). Dr. Kim explained that the medication Emgality required a 6-month commitment, and he suggested a NeuroMag trial. (Tr. 442). He would see Plaintiff again in 3-4 months unless her symptoms worsened or she had new symptoms or side effects from the medication. (Tr. 442). In December 2019, Plaintiff was doing well on the medication regimen and her examination was essentially normal except for gait apraxia. (Tr. 443-44). Even so, Dr. Kim started her on another medication. (Tr. 444).

In March 2020, Plaintiff reported that she continued to experience ongoing headaches, which were occurring three to four times a week, with each episode lasting three to four hours, even while on the current medication regimen. (Tr. 445). She also reported she struggled to stay asleep at night and found herself extremely tired by early afternoon. (Tr. 445). Her neurological examination was generally normal, except for gait apraxia. (Tr. 446). Dr. Kim diagnosed Plaintiff with chronic intractable daily headache of a migraine type, with suboptimal response from her mediations of Emgality, Imitrex, and Zomig. (Tr. 446). He also diagnosed her with chronic episodic vertigo and disequilibrium with near syncope, possible vestibular migraine, chronic cervicalgia with cervicogenic headache. (Tr. 446). Based on the suboptimal response from Emgality, Dr. Kim switched Plaintiff to Ajovy and stopped some other medications. (Tr. 445, 447). In July 2020, Plaintiff saw Dr. Kim

for a follow-up. (Tr. 448). Plaintiff reported continuing to suffer with at least 10-15 headaches per month despite using the new medication, with each headache usually lasting 4-5 hours at a time. While the headaches were better, she still had frequent mental fogging, vertigo, and mood changes "that are just as disabling." (Tr. 448). Her neurological examination was generally normal, except for gait apraxia. (Tr. 449). Dr. Kim's impressions were consistent with past visits. (Tr. 449). Dr. Kim's treatment plan continued Plaintiff on the same medical regimen, added one medication, and suggested Plaintiff might benefit from a Botox injection. (Tr. 450).

On August 25, 2020, Dr. Kim was deposed. (Tr. 451-63). Dr. Kim testified that he first saw Plaintiff for chronic intractable headaches, that "did not respond to a variety of different medications that she had tried already before she came to see me." (Tr. 456). About the time she first saw Dr. Kim, Plaintiff was experiencing 20 to 25 headaches per month but after treatment with Dr. Kim, she experienced 10 to 15 headaches per month. (Tr. 457). Dr. Kim adjusted Plaintiff's medications at each visit to try to find a medication or combination of medications that would respond to her condition. (Tr. 457-58). Dr. Kim found Plaintiff's typical headache lasted a minimum of several hours up to 72 hours. (Tr. 458-59). Plaintiff reported she had pulsating headaches with severe pain, and may also have photophobia, phonophobia, and nausea. (Tr. 459). Dr. Kim found Plaintiff to continue to have at least 10-15 headaches per month. (Tr. 459). Dr. Kim performed objective testing to rule out

alternative medical causes. (Tr. 459-460). He found no confounding factors. (Tr. 460). Dr. Kim testified that Plaintiff would "more likely" not be able to return to work because her headaches were drug resistant and every headache she suffered was completely debilitating. (Tr. 460-61). Plus, even when the headaches subsided, she still had significant mental fogging where she was forgetful and would be unable to focus. (Tr. 461). Dr. Kim testified that if you added up all the days Plaintiff suffered from headache plus the other disabling non-headache symptoms, the result was over 20 days per month and he did not believe there were jobs that would allow for such absences. (Tr. 461).

In the decision, the ALJ summarized Dr. Kim's treatment notes. (Tr. 21). The ALJ founds that Dr. Kim was an acceptable medical source who diagnosed Plaintiff with migraines without aura after reviewing her medical history, conducting an examination, and conducting objective tests to exclude alternative causes for her symptoms. (Tr. 22). While the ALJ found Plaintiff's headache disorder a medically determinable impairment, she questioned the extent of the symptoms and whether they were consistent with the evidence. (Tr. 22).

The ALJ then considered Dr. Kim's opinion and found it partially persuasive. (Tr. 22). She presented these reasons.

- "Dr. Kim stated that claimant's symptoms are disabling, and that she has disabling non-headache symptoms. Statements indicating symptoms are disabling are not medical opinions under our regulations. They are not particularly useful to this determination, as they do not describe how the

symptoms limit the claimant or activities that she can or cannot due despite her symptoms."

- "[Dr. Kim] indicated that over 20 days per month, she has headaches and symptoms including forgetfulness and trouble focusing. But these alleged symptoms are not corroborated by objective signs. Exams never show any confusion, memory deficit or lack of concentration. Exams never show claimant so disabled that she cannot function or perform ADLs. Exams never witness a headache/migraine event. Exams show no vertigo or dizziness."

- "The deposition testimony is inconsistent with Dr. Kim's actual treatment notes that repeatedly opine claimant 'is doing well and is in relative remission of the above-described conditions. Patient has been compliant with the prescribed medical regimen and denies any significant adverse effects or complications. The patient denies any new issues or complaints.' (Exhibit B7F/58, 60; B8F/1; B9F/1)."

- "Treatment notes of Dr. Kim are supported by notes of claimant's primary physician showing she was on Emgality, which was working well. (Exhibit B7F/42-5) Treatment notes of Dr. Kim and primary care are much more convincing. They consistently show claimant in relative remission, doing well, with no new complaints."

- "Dr. Kim is board certified in multiple specialties, most importantly, he is a board[-]certified neurologist, and board certified in headache medicine. Certainly if--as Dr. Kim testified at his deposition--claimant's treatment was not effective, or if she had 10-15 headaches monthly, or if she had 'drug resistant headaches,' or if each headache was an 8-10/10 in severity, or if she was dizzy, or if they were so severe to be disabling, Dr. Kim, a treating neurologist, would have noted this in his exam findings and sought alternative treatment, rather than noting how well claimant was doing with treatment and that she was in relative remission from her conditions. In other words, it is inconsistent that the doctor would note claimant is in relative remission and doing so well, only to contradict his own findings and testify that claimant is so severely disabled that she cannot return to work."

- "Dr. Kim's deposition testimony calls into question claimant's status when she initially saw him. He testified that claimant came to see him for 'chronic intractable headaches that apparently did not respond to a variety of different medications that she had tried already before she came to see me.' (Exhibit B10F/6) Notably, headache were well-controlled prior to seeing Dr. Kim, according to Exhibits B2F/36-39, 41-45, 54-57 . . .."

- "Dr. Kim saw claimant 5 times. There is no notation of any exam being rescheduled due to claimant's impairments. Each exam is generally unremarkable. Dr. Kim saw claimant on August 5, 2019 where she had unremarkable gait and, generally, a normal exam; on September 9 and 18, 2019 where the exams were virtually normal, but for gait apraxia; on March 3, 2020 where Dr. Kim told claimant to follow up in 4 months unless present symptoms worsen, or new symptoms arise; and, 4 months later on July 20, 2020, when he recommended Botox injections (which claimant had done in the past). (Exhibits B3F, B6F, B8F, B9F)."

- "His reports of her past treatment do not coincide with Exhibit B2F and the improvement noted therein with treatment. Dr. Kim's exams show claimant with intact memory recall, fluent speech without [aphasia] or dysarthria, visual field and coordination was normal. He noted gait apraxia at times, but made no comment on it, despite the fact that he is a board[-]certified neurologist that addresses motor function. In both exams, he noted that motor function is unchanged from the prior exam, which was generally normal at the outset."

- "Further, he noted claimant has disabling vertigo. Much of Dr. Kim's statements are based on subjective reports, as there is no evidence of record that claimant appears dizzy. In fact, most, if not all exams show claimant's physical findings normal and intact. If she was in distress, in pain, showing pain behaviors, or having headaches or migraines as severely or as frequently as alleged, there should be at least some notation of it being observed by her treating doctors."

(Tr. 22-23).

In synthesizing the ALJ's justification for finding Dr. Kim's opinion partially persuasive, the reasons boil down as follows. First, Dr. Kim's statements on disability were not opinions and were not helpful. Second, Dr. Kim's relatively normal exam findings did not support his opinion, which meant that his opinion was based on subjective complaints. The record also contained no notations that Plaintiff rescheduled her appointments, so essentially, she should have had symptoms at least at some of her visits. Third, if treatment was as ineffective as Dr. Kim opined, as a

board-certified doctor in multiple specialties, he should have ordered alternative treatments. Fourth, Dr. Kim did not address Plaintiff's gait apraxia. (Tr. 22-23).

Substantial evidence does not support the ALJ's reasoning. To begin, the ALJ found Dr. Kim's opinion partially persuasive, but it was unclear what part, if any, the ALJ found persuasive. (Tr. 22). As to her reasoning, the ALJ first determined that Dr. Kim's opinion on disability was not an opinion and was not helpful because he did not list her functional limitations. (Tr. 22). Dr. Kim explained that Plaintiff suffered from drug-resistant, severely debilitating headaches, with other impairments such as mental fogging, forgetfulness, and inability to focus. (Tr. 461). Also associated with the headache pain, are photophobia or phonophobia and nausea. (Tr. 459). Dr. Kim found that these debilitating headache symptoms occur over 20 days per month, and Plaintiff would be unable to function on these days (Tr. 460). While not a true function-by-function analysis, it is clear that Dr. Kim opined Plaintiff would be unable to function at a work setting while in the midst of a headache or related symptoms, would have mental fogginess, forgetfulness, and inability to focus, and therefore would have excessive absences from work.

Second, while true Dr. Kim's exams showed relatively normal findings and that Plaintiff was doing well at times, as a board-certified physician in neurology and headaches, he clearly found that Plaintiff had been and continued to suffer from debilitating headaches with associated symptoms for many years. As Dr. Kim noted,

Plaintiff's medications worked for a period of time and during this period her headaches were mainly in remission and she was doing well, but then her medications became suboptimal and no longer provided relief. (Tr. 447). Further, present-day laboratory tests cannot prove migraines. *See Beard v. Kijakazi*, No. 4:20-cv-00463-RDP, 2021 WL 3473216, at *7 (N.D. Ala. Aug. 6, 2021) (citing *Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996)). And as a general matter, an ALJ may not substitute her opinion on medical issues for that of a medical expert. *Hand v. Soc. Sec. Admin., Comm'r*, 786 F. App'x 220, 224 (11th Cir. 2019) (citing *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)). Although the ALJ would have liked Plaintiff to see Dr. Kim while in the midst of a migraine headache or while having associated symptoms, Dr. Kim did not need this to diagnose Plaintiff, prescribe a treatment plan, or opine on the associated debilitating functions caused by these headaches and associated symptoms.

Third, the ALJ posited that if the continued treatments were ineffective, Dr. Kim should have tried something else. (Tr. 22). But Dr. Kim analyzed Plaintiff's medication regimen at each visit, taking Plaintiff off certain ineffective medications and trying others. He prescribed different combinations of medications to try to find a combination that would be effective permanently and not for short periods of time. (*See* Tr. 437-450). He also suggested Botox and a NeuroMag trial. (Tr. 442, 450).

Finally, the ALJ discounts Dr. Kim's opinion because he noted Plaintiff's gait apraxia, but does not address it. (Tr. 23). The ALJ failed to build a logical bridge between this comment and finding Dr. Kim's opinion partially persuasive. Substantial evidence does not support the ALJ's reasons for finding Dr. Kim's opinion unsupported by his treatment notes, and therefore partially unpersuasive.

Next, as to consistency with other medical opinions, the ALJ found Dr. Kim's opinion inconsistent with other medical evidence, specifically the treatment notes of Plaintiff's primary care physician. (Tr. 22-23). The ALJ found the treatment notes of Dr. Kim and Plaintiff's primary care physician consistent, and used the example that the medication Emgality was working well. The ALJ questioned Dr. Kim's statement that when Plaintiff began seeing him, her chronic intractable headaches did not respond to various medications, when in actuality, the ALJ claimed Plaintiff's headaches were well controlled before seeing Dr. Kim. (Tr. 22-23). Again, while Plaintiff's headaches were at times well controlled with medication, the medication appeared to become ineffective over time and her physicians tried different medication combinations to attempt to find permanent relief. Plaintiff saw Dr. Kim for her ongoing problems with headaches, the ineffectiveness of her medication, and associated issues. (Tr. 437). The ALJ specifically mentioned the medication, Emgality, as was working well, but as with her other medications, Plaintiff eventually had a suboptimal response to it and Dr. Kim switched Plaintiff

to a different medication. (Tr. 446-47). For these reasons, substantial evidence does not support the ALJ's assessment of the consistency of Dr. Kim's opinion with other evidence of record.

The ALJ's assessment of the persuasiveness of Dr. Kim's opinion is not supported by substantial evidence. The ALJ appears to substitute her opinion for that of Dr. Kim. Thus, remand is warranted to reevaluate Dr. Kim's opinion.

**B.     Subjective Complaints**

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's subjective complaints from her migraine headaches. (Doc. 17, p. 16). Because the Court is remanding this action to reevaluate Dr. Kim's opinion, the Court will also require the Commissioner to reevaluate Plaintiff's subjective symptoms.

**C.     Validly Appointed Commissioner of Social Security**

Plaintiff argues that the Commissioner of Social Security was not validly appointed on November 2, 2020, the date of Plaintiff's unfavorable decision. (Doc. 17 p. 18). Plaintiff claims that the Social Security Administration knowingly violated Plaintiff's constitutional rights and she is entitled to remand for a *de novo* hearing before a new ALJ. (Doc. 17, p. 23). The Commissioner argues that she is not entitled

to a rehearing on her disability claim. (Doc 22, p. 6-22). Because the Court is remanding this case on a different issue, the Court need not reach this issue.

## III.   Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Dr. Kim's opinion, and reevaluate Plaintiff's subjective complaints. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on August 18, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties